Slip Op. 16-27

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| JEDWARDS INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Before: Leo M. Gordon, Judge <br><br> Court No. 11-00031 |

## OPINION

[Cross-motions for summary judgment denied; judgment entered classifying subject merchandise.]

Dated: March 28, 2016

John C. Eustice, Richard A. Mojica, Richard H. Abbey, and Daniel P. Wendt, Miller & Chevalier Chartered, of Washington DC for Plaintiff Jedwards International, Inc.

Jennifer E. LaGrange, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, DC for Plaintiff United States. On the brief with her were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, Reginald T. Blades, Jr., Assistant Director. Of counsel on the brief was Sheryl A. French, Attorney, Office of Assistant Chief Counsel for International Trade Litigation U.S. Customs and Border Protection of New York, NY.

Gordon, Judge: Plaintiff Jedwards International, Inc. ("Plaintiff" or "Jedwards") challenges the classification by U.S. Customs and Border Protection ("Customs") of Jedwards' entries of imported krill oil under the Harmonized Tariff Schedule of the United States ("HTSUS"). Before the court are the cross-motions for summary judgment of Jedwards and Defendant United States. See Pl.'s Mot. for Summ. J., ECF No. 41 ("Pl.'s Br."); Def.'s Mem. in Supp. of its Cross-Mot. for Summ. J. & Opp. to Pl.'s Mot. for Summ. J., ECF No. 51 ("Def.'s Br."); Pl.'s Opp. to Def.'s Cross-Mot. for Summ. J. & Reply Br. in

Case 1:11-cv-00031-LMG   Document 70   Filed 03/28/16   Page 2 of 13

Court No. 11-00031                                                                                                Page 2

further Supp. of its Mot. for Summ. J., ECF No. 56; Def.'s Reply in Supp. of its Cross-Mot. for Summ. J. & Opp. to Req. to File Amicus Br., ECF No. 59 ("Def.'s Reply"). The court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (2012).

For the reasons set forth below, the court classifies the subject entries under HTSUS 1603.00.90.

## I. Undisputed Facts

The following facts are not in dispute. The merchandise at issue in this case is krill oil, described on Plaintiff's commercial invoices "Krill Oil Superba™." Jt. Statement of Undisp. Facts ¶ 1, ECF No. 38 ("Jt. Undisp. Facts"). Plaintiff's krill oil is a dark, viscous liquid with a strong odor obtained from Antarctic krill, which is a shrimp-like marine invertebrate animal. Plaintiff markets its krill oil as a nutritional supplement. Id. ¶¶ 4, 6.

Plaintiff's krill oil is manufactured in a two-stage process. Stage one involves heating, cooking, drying, and separating the krill meal from the krill animal. Stage two involves extraction of substances from the krill meal using ethanol. The resulting solution is filtered, concentrated, and blended to specification. Consequently, with the exception of residual amounts of ethanol solvent left over from the manufacturing process, Plaintiff's krill oil contains only substances that are naturally occurring in krill. Id. ¶¶ 7-8. Customs tested Plaintiff's krill oil revealing the following approximate chemical composition: 53% phospholipids, 23% triglycerides; 8% free fatty acids; and 3% each of mono- and di-glycerides. Plaintiff's krill oil also contains 7% water, 1.7% sodium chloride, and astaxanthin (an antioxidant). Id. ¶¶ 15-18.

## II. Standard of Review

The court reviews Customs' protest decisions de novo. 28 U.S.C. § 2640(a)(1). USCIT Rule 56 permits summary judgment when "there is no genuine issue as to any material fact." USCIT R. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). In considering whether material facts are in dispute, the evidence must be considered in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Anderson, 477 U.S. at 261 n.2.

A classification decision involves two steps. The first step addresses the proper meaning of the relevant tariff provisions, which is a question of law. See Faus Group, Inc. v. United States, 581 F.3d 1369, 1371-72 (Fed. Cir. 2009) (citing Orlando Food Corp. v. United States, 140 F.3d 1437, 1439 (Fed. Cir. 1998)). The second step involves determining whether the merchandise at issue falls within a particular tariff provision as construed, which, when disputed, is a question of fact. Id.

When there is no factual dispute regarding the merchandise, the resolution of the classification issue turns on the first step, determining the proper meaning and scope of the relevant tariff provisions. See Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1378 (Fed. Cir. 1999); Bausch & Lomb, Inc. v. United States, 148 F.3d 1363, 1365-66 (Fed. Cir. 1998). This is such a case, and summary judgment is appropriate. See Bausch & Lomb, 148 F.3d at 1365-66.

While the court accords deference to Customs' classification rulings relative to their "power to persuade," United States v. Mead Corp., 533 U.S. 218, 235 (2001) (citing

Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)), the court has "an independent responsibility to decide the legal issue of the proper meaning and scope of HTSUS terms." Warner-Lambert Co. v. United States, 407 F.3d 1207, 1209 (Fed. Cir. 2005) (citing Rocknel Fastener, Inc. v. United States, 267 F.3d 1354, 1358 (Fed. Cir. 2001)).

### III. Discussion

Classification disputes under the HTSUS are resolved by reference to the General Rules of Interpretation ("GRIs") and the Additional U.S. Rules of Interpretation. See Carl Zeiss, 195 F.3d at 1379. The GRIs are applied in numerical order. Id. Interpretation of the HTSUS begins with the language of the tariff headings, subheadings, their section and chapter notes, and may also be aided by the Explanatory Notes published by the World Customs Organization.[1] Id. "GRI 1 is paramount. . . . The HTSUS is designed so that most classification questions can be answered by GRI 1 . . . ." Telebrands Corp. v. United States, 36 CIT ___, ___, 865 F. Supp. 2d 1277, 1280 (2012).

Pursuant to GRI 1, merchandise that is described "in whole by a single classification heading or subheading" is classifiable under that heading. CamelBak Prods. LLC v. United States, 649 F.3d 1361, 1364 (Fed. Cir. 2011). If that single classification applies, the succeeding GRIs are inapplicable. Mita Copystar Am. v. United States, 160 F.3d 710, 712 (Fed. Cir. 1998).

The court construes tariff terms according to their common and commercial meanings, and may rely on both its own understanding of the terms as well as upon

---

[1] The Explanatory Notes are the World Customs Organization's official interpretation of the Harmonized System upon which the HTSUS is based.

lexicographic and scientific authorities. See Len-Ron Mfg. Co. v. United States, 334 F.3d 1304, 1309 (Fed. Cir. 2003). The court may also refer to the Explanatory Notes "accompanying a tariff subheading, which—although not controlling—provide interpretive guidance." E.T. Horn Co. v. United States, 367 F.3d 1326, 1329 (Fed. Cir. 2004) (citing Len-Ron, 334 F.3d at 1309).

Upon entry, Plaintiff classified its krill oil under HTSUS subheading 1603.00.90, which includes "[e]xtracts and juices of meat, fish or crustaceans, molluscs or other aquatic invertebrates" other than clam juice. HTSUS subheading 1603.00.90. An "extract" is "a preparation containing the essence of the substance from which it is derived." Marcor Development Corp. v. United States, 20 CIT 538, 545-46, 926 F. Supp. 1124, 1132-33 (1996) (discussing numerous lexicographical sources and the Explanatory Notes to Chapter 16). Subheading 1603.00.90 therefore covers, among other things, preparations of aquatic crustaceans that retain the essence of the crustacean. There is no dispute that Plaintiff obtains its product by capturing and extracting substances from krill, which are small aquatic crustaceans. Jt. Undisp. Facts ¶ 4. There is also no dispute that Plaintiff's krill oil retains the "essence" of the krill: "[W]ith the exception of residual amounts of ethanol solvent left over from the manufacturing process, Plaintiff's krill oil only contains substances that are naturally occurring in krill." Id. ¶ 7 (emphasis added). Plaintiff's krill oil is therefore prima facie classifiable under HTSUS subheading 1603.00.90 as an extract of an aquatic crustacean.

Customs, however, classified Plaintiff's krill oil under subheading 3824.90.40. This subheading falls under Section VI of the HTSUS, "Products of the Chemical or Allied

Industries," which includes Chapter 38, entitled, "Miscellaneous Chemical Products." HTSUS subheading 3824.90.40 covers "[p]repared binders for foundry molds or cores; chemical products and preparations of the chemical or allied industries (including those consisting of mixtures of natural products), not elsewhere specified or included: Other: Other: Fatty substances of animal or vegetable origin and mixtures thereof." Defendant maintains that subheading 3824.90.40 is the correct classification for Plaintiff's krill oil. Def.'s Br. at 17.

Plaintiff for its part argues that the correct classification for its krill oil is under Chapter 15 (not under Chapter 16 as it originally classified its merchandise upon entry). Pl.'s Br. at 16. The relevant provisions of Chapter 15 cover animal "fats or oils." See HTSUS subheadings 1506.00.00, 1517.90.90.

The court is not persuaded that the parties' asserted classifications are correct. See Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984) ("[T[he court's duty is to find the correct result." (emphasis in original)). Instead, the court holds that Plaintiff's original classification upon entry, subheading 1603.00.90, is the correct classification.

As for Customs' assessed classification, subheading 3824.90.40 is a "basket" or "catchall" provision, which by its own terms applies if the imported merchandise is "not elsewhere specified or included" within the tariff schedule. See Lynteq, Inc. v. United States, 976 F.2d 693, 699 (Fed. Cir. 1992) (interpreting similar language in HTSUS Chapter 32). Plaintiff's krill oil, extracted from an aquatic crustacean and therefore prima facie classifiable under subheading 1603.00.90, is "elsewhere specified or included"

within the HTSUS and is not classifiable under subheading 3824.90.40. On a more practical level, Plaintiff's natural nutritional supplement does not appear to fit logically alongside "nonrefractory mortars and concretes," "nonagglomerated metal carbides mixed together or with metallic binders," and "prepared binders for foundry molds or cores." See HTSUS heading 3824.

Defendant argues that the court should defer to HQ Ruling H097639 (Aug. 24, 2010) ("August 2014 Ruling"), in which Customs classified Plaintiff's krill oil under Chapter 38 and ruled subheading 1603.00.90 inapplicable. That Ruling, however, lacks a "thoroughness, logic, and expertness," to warrant deference. Mead, 533 U.S. at 220. Customs misread the Explanatory Notes to Chapter 16 as requiring extracts to contain preservatives such as salt, but the Explanatory Notes simply state that they "may" contain such preservatives, EN 16.03 ("All these products may contain salt or other substances added in sufficient quantities to ensure their preservation." (emphasis added)). Customs also misread a decision of this Court to support the inapplicability of Chapter 16. Citing Marcor Development Corp. v. United States, 20 CIT at 546, 926 F. Supp. at 1133, Customs in its August 2014 Ruling concluded that Plaintiff's krill oil is not an "extract" because it consists of 53% phospholipids and "a number of other ingredients in varying percentages." HQ Ruling H097639. Customs failed to acknowledge that Marcor involved an added ingredient in a high quantity that prevented the imported product from being an extract. See Marcor, 20 CIT at 545-46, 926 F. Supp. at 1132-33. Here, on the other hand, Plaintiff's krill oil only contains substances naturally occurring in krill (and a small amount of leftover solvent). Jt. Undisp. Facts ¶¶ 7-8. Therefore, despite Defendant's arguments

to the contrary, Marcor does not preclude the classification of Plaintiff's product as an extract of krill.

Plaintiff's proposed classification under Chapter 15 presents a more interesting possibility than Customs' assessed classification. Chapter 15 covers "Animal or vegetable fats and oils and their cleavage products; prepared edible fats; animal or vegetable waxes." Plaintiff argues that its krill oil should be classified under subheading 1506.00.00, as an "animal . . . oil", or alternatively under subheading 1517.90.90 covering "edible mixtures or preparations of animal . . . oils," or under Pl.'s Br. at 16-17, 31-32. The question is whether Plaintiff's product is an "animal oil" within the meaning of Chapter 15.

Though the term "animal oil" is not specifically defined in the HTSUS, the Explanatory Notes to Chapter 15 define "animal oils" as "esters of glycerol with fatty acids (such as palmitic, stearic and oleic acids)." EN 15A.[2] That descriptive, "esters of glycerol with fatty acids," is also found in many lexicographic sources defining animal oils and fats. See Hawley's Condensed Chemical Dictionary 487 (13th ed. 1997) ("Oils derived from animals . . . are composed largely of glycerides of the fatty acids . . . ."); Van Nostrand's Encyclopedia of Chemistry 603 (5th ed. 2005) (defining "fat" as a "glyceryl ester of higher fatty acids," and noting that "[t]here is no chemical difference between a fat and an oil"); David W.A. Sharp, The Penguin Dictionary of Chemistry 166 (3d ed. 2003) ("esters of

---

[2] The Explanatory Notes exclude jojoba oil and sperm whale oil from the definition. EN 15(A) (HTSUS heading 1515 (covering jojoba oil): HTSUS heading 1521 (covering various "waxes," including "spermaceti")).

Court No. 11-00031 Page 9

fatty acids with glycerol"); see also Def.'s Br. at 20, 31-33 (pointing out that four of the five dictionaries Plaintiff cites share this definition).

"Esters of glycerol" are "glycerides"—"esters obtained from glycerol by the replacement of one, two, or three hydroxyl groups with a fatty acid," known as monoglycerides, diglycerides, and triglycerides, respectively. Merriam-Webster Dictionary Online, http://www.merriam-webster.com/dictionary/monoglyceride (last visited this date) (defining "monoglyceride"); Merriam-Webster Dictionary Online, http://www.merriam-webster.com/dictionary/ diglyceride (last visited this date) (defining "diglyceride"); Merriam-Webster Dictionary Online, http://www.merriam-webster.com/dictionary/ triglyceride (last visited this date) (defining "triglyceride").

The typical "esters of glycerol" found in animal fats are triglycerides. Hawley's Condensed Chemical Dictionary, supra 1133 (defining "Triglycerides" as the "chief constituent" of animal or vegetable fats and oils); Dictionary.com, http://dictionary.reference.com/browse/fat?s=t (last visited this date) (defining "fat," under heading "fat in Science," as comprised "chiefly of triglycerides"); see also Institute of Shortening and Edible Oils, Food Fats and Oils 1 (9th ed. 2006) (commercial source describing triglycerides as the "[m]ajor" component of fats and oils, as opposed to monoglycerides, diglycerides, and other "minor" components); Richard D. O'Brien, Fats and Oils: Formulating and Processing for Applications 8 (3d ed. 2009) ("The primary constituents in crude fats and oils are the triglycerides . . . ."); 1 Kirk-Othmer Concise Encyclopedia of Chemical Technology 804 (4th ed. 1999) ("Fats and oils are comprised primarily of triglycerides . . . .").

In addition to triglycerides, oils obtained from animals always contain "minor constituents such as free fatty acids, phospholipids, sterols, hydrocarbons, pigments, waxes, and vitamins." 13 Ullman's Encyclopedia of Industrial Chemistry 2-3 (6th ed. 2003); O'Brien, supra 1 ("All edible fats and oils . . . consist predominantly of glycerol esters of fatty acids, or triglycerides, with some nonglyceridic materials present in small or trace quantities.").

Plaintiff's krill oil has 23% triglycerides and 53% phospholipids. Triglycerides are not the "predominant" constituent and phospholipids should only be a "minor" constituent for Plaintiff's krill oil to be an animal oil within the meaning of Chapter 15. Ullman's Encyclopedia of Industrial Chemistry, supra; O'Brien, supra 1; see also Bio Factsheet, The Structure and Biological Functions of Lipids, September 2000 (Jan. 14, 2015) (explaining that phospholipids are not triglycerides). Defendant suggests in its cross-motion that the court should require a 95% threshold for triglyceride content. Def.'s Br. at 1. But see Def.'s Reply at 3-4 (arguing in the alternative for application of a lower threshold). Plaintiff counters with evidence and lexicographic sources indicating that specific animal or vegetable oils covered under Chapter 15 consist of less than 95% triglycerides. The court need not resolve the precise percentage of triglycerides required for a substance to be an animal oil. It suffices to say that triglycerides constitute neither the majority of Plaintiff's krill oil nor the largest component by share. Of the possible thresholds for triglycerides in animal oils that the court might consider, Plaintiff's krill oil meets none.

x

x

Plaintiff eschews the definition of animal oils in the Explanatory Notes, and instead proffers a more generic definition of the term "oil" that Plaintiff argues is "(1) viscous; (2) liquid or easily liquefiable at room temperatures; (3) combustible; (4) soluble in certain organic solvents such as ether but not in water; and (5) used in a great variety of products (e.g., foodstuffs, lubricants and fuels)." Pl.'s Mot. at 18 (combining three online dictionary definitions of "oil"). Such a broad-based definition of oil is of questionable use here because the term "oil" is relatively ubiquitous throughout the HTSUS. Such ubiquity counsels caution. The court is reluctant to stray from the interpretive guidance of the Explanatory Notes for Chapter 15, which provide a workable definition of the specific term "animal oil." Given that definition, the court does not believe it wise or practical to attempt to fashion a one-size fits all definition for the term "oil" here.

Plaintiff challenges any definition of "animal oil" predicated on triglyceride content by identifying various substances it believes should be classified as animal and vegetable oils under Chapter 15 but could not if triglyceride content is considered. Plaintiff's own authority, however, notes that several of the substances do in fact consist primarily of triglycerides. Def.'s Reply at 4-5 (table listing each substance by triglyceride content as reported in Plaintiff's sources, including cod liver oil (subheading 1504.10.20), maize oil (subheadings 1515.21.00 and 1515.29.00), palm oil (subheadings 1511.10.00 and 1511.90.00), and olive oil (heading 1509)). Plaintiff argues that the substance lanolin does not consist primarily of triglycerides, but the HTSUS does not describe lanolin as an "animal oil." See HTSUS 1505 (covering "[w]ool grease and fatty substances derived therefrom (including lanolin)" (emphasis added)). Plaintiff also notes that jojoba oil and

sperm whale oil do not consist primarily of triglycerides despite their classification in Chapter 15, see HTSUS heading 1515 (covering jojoba oil); HTSUS heading 1521 (covering various "waxes," including "spermaceti"). The Explanatory Notes, though, specifically exclude both of these substances from the definition of animal and vegetable oils, EN 15(A) ("With the exception of sperm oil and jojoba oil, animal or vegetable fats and oils are esters of glycerol with fatty acids (such as palmitic, stearic and oleic acids." (emphasis added)), meaning Chapter 15 in particular and the Harmonized System as a whole already account for these two exceptions. Plaintiff's remaining examples do not appear by name in the HTSUS. These other substances derived from certain species of marine animals may pose interesting classification hypotheticals, but they do not in the court's view raise any doubts about the definition of animal oil provided in the Explanatory Notes.

      Plaintiff also contends that its krill oil is known commercially as an "oil," and should therefore be classified as such. Id. at 22-23 (citing Intercontinental Marble Corp. v. United States, 381 F.3d 1169 (Fed. Cir. 2004)). The court understands the appeal of this argument, but unfortunately, although "the manner in which merchandise is advertised and marketed is a factor to be considered in determining its classification, it is not controlling." Dominion Ventures, Inc. v. United States, 10 CIT 411, 413 (1986); accord Processed Plastic Co. v. United States, 29 CIT 1129, 1139, 395 F. Supp. 2d 1296, 1306 (2005); Totes, Inc. v. United States, 16 CIT 796, 797 (1992). Here, while Plaintiff's substance is marketed as krill "oil," that substance is technically an "extract" and not an "animal oil" within the meaning of the tariff schedule.

Plaintiff also maintains that the court should reject a definition of animal oil that requires a "predominance" of triglycerides because that definition is partially derived from scientific dictionaries. Pl.'s Br. at 19. Technical sources, however, often do "supplement the dictionary definitions with additional necessary precision." Rocknel Fastener Inc. v. United States, 267 F.3d 1354, 1361 (Fed. Cir. 2001); see also Kahrs Int'l, Inc. v. United States, 713 F.3d 640, 644 (Fed. Cir. 2013) (explaining that a court may consult "reliable information sources" to ascertain the common or commercial understanding of a term). The scientific sources here add "additional necessary precision" because they help confirm the relative quantum of triglycerides required for a substance to be an animal oil within tariff schedule. These scientific sources do not conflict with the common or commercial meaning, see Alexandria Int'l, Inc. v. United States, 13 CIT 689, 692 (1989), because, as described above, common and commercial sources note that triglycerides are predominant in animal oils.

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment are denied. In accordance with Jarvis Clark, Plaintiff's imported krill oil is classifiable under HTSUS subheading 1603.00.90. Judgment will enter accordingly.

                                            /s/ Leo M. Gordon
                                         Judge Leo M. Gordon

Dated:   March 28, 2016
           New York, New York